## THE JOSEPHINE.

(Circuit Court of Appeals, Second Circuit. November 13, 1917.)

No. 44.

COLLISION ☞75—SCHOONER AND ANCHORED SCOW—FAILURE TO MAINTAIN ANCHOR LIGHT.

A collision on a dark and stormy night in January between a scow, anchored behind a breakwater, and a schooner, which had just rounded the end of the breakwater, also seeking an anchorage out of the storm, *held* due solely to the fault of the scow for failing to carry an anchor light; the evidence being insufficient to sustain her claim the schooner was not keeping a proper lookout at the time.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty for collision by David Cohen and others, owners of the schooner Thomas R. Wooley, against the barge Josephine; Jo-

sephine E. Cane, claimant. Decree for libelants, and claimant appeals. Affirmed.

This is an appeal from a decree of the District Court (Judge Mayer presiding), upon a libel in rem against the scow Josephine for a collision occurring inside the Stonington breakwater in the early morning of January 16, 1913, between herself and the schooner Thomas R. Wooley. The District Court held the Josephine solely at fault for failure to maintain an anchor light on the night in question and exonerated the schooner. The finding of the court as to the light was upon disputed evidence and the appellant does not challenge it here, but accepting the fact that the scow was at fault for failure to maintain her light, insists that the schooner was likewise at fault in omitting to maintain a proper lookout when she came into the harbor.

On the 15th of January, 1913, the schooner set sail from College Point, N. Y., bound for New Bedford, Mass., with 700 barrels of cordage oil. At 4 a. m. on the 16th, while somewhere off Stonington, Conn., the weather, which had become threatening, forced her into Stonington Harbor for refuge. The wind was southwest, it was raining in squalls, and the schooner could not see objects on the water more than a few feet outboard, though lights were plainly visible, as there was no fog. The harbor at Stonington is in part formed by two breakwaters, one upon the east, which does not concern this case, the other upon the south and west, terminating in an arm extending northeast and southwest. The southern and western breakwater formed on the night in question a protection against the weather. Inside it and upon the anchorage ground three barges had been anchored, the first, the Josephine, without a light, the second, with an anchor light properly burning on its after staff, and the third, which need not be considered. The Josephine was 115 feet long, and on the night in question loaded to a freeboard of probably not over 2 feet. She was anchored close up to the second barge which carried the light.

The Wooley was coming down Long Island Sound, with her sheets eased, running free on the starboard tack, bound east. To enter Stonington Harbor she had to starboard her wheel and come around through an angle of more than 180 degrees. When off the harbor she saw the light of the second barge across the breakwater, as well as the light upon the end of the breakwater itself. Starboarding, she jibed and came around on the port tack, continuing to come into the wind until she rounded the end of the breakwater. Thereupon she continued close-hauled, meaning to anchor on the port side of the barge, of which she saw the light. As she approached, she eased her foresheets and let her jib run. She had passed the light on the second barge and was about to luff into the wind, when her mate, Cornillet, made out the second barge about 25 feet off the starboard bow. He called out to the captain, who was at the wheel, and who at once put down his helm; but it was too late to avoid a contact. The schooner's rudder fouled the tackle of the barges and she was forced inshore, where she sank, doing the damage in question.

There were three in the crew of the Wooley, the master, Swenson, the mate, Cornillet, and the cook, Carroll. Before rounding the breakwater all were on deck, but their subsequent positions and maneuvers are the subject of dispute.

Macklin, Brown & Purdy, of New York City (William F. Purdy, of New York City, of counsel), for appellant.

Park & Mattison, of New York City (Samuel Park, of New York City, of counsel), for appellees.

Before WARD and HOUGH, Circuit Judges, and LEARNED HAND, District Judge.

LEARNED HAND, District Judge (after stating the facts as above). The sole questions in the case are whether the Wooley main-

tained no proper lookout, and, if not, whether she has shown beyond reasonable doubt that her failure did not contribute to the collision. On the first of these questions the claimant has the burden, on the second the libelant. It is difficult from the testimony to learn with certainty just what the mate and cook on the Wooley were doing at the time of the accident. The testimony as it reads in the record is confused and in some places seems to be inconsistent. So far as we have been able to learn, the most reasonable understanding of the facts is as follows:

After the Wooley had made out the light at the end of the breakwater and the light of the second barge across the breakwater, of which she was then about abreast, the cook stood by aft to take in the main sheet for the jib; necessarily this took place shortly before the end of the breakwater was reached, the wind being southwest. After making fast the main sheet, the schooner being on the port tack, both men went forward, where all future work was to be. We may assume that at the last minute the captain expected himself to ease the main sheet or perhaps to come quite into the wind. In any case the two men were not needed aft again. Whether they eased the foresheets before or after they let run the jib does not definitely appear, but at some time, presumably after the schooner had rounded the end of the breakwater, both men were at work easing the foresheets. This was obviously desirable, as the vessel was coming to anchor and wished to diminish her headway as much as possible. The captain gave the order to let the jib run, which was executed, and at some time thereafter both men were standing forward of the mainmast ready to slip the anchor.

While in this posture the mate made out the Josephine some 25 feet forward and on the starboard bow. It nowhere definitely appears whether just before they had been looking out or what they were doing, but it does appear that the mate had acted as lookout before the necessary maneuvers to bring the schooner around the breakwater and to anchor. At the moment of the collision there was nothing to intercept the view of either of the men forward and there was nothing to engage their attention as they were only waiting for the word to slip the anchor. The vessel was under diminished headway, the foresail probably shaking in the wind, and there was every reason to suppose that there was no vessel forward of the light on the second barge. Nowhere in the testimony can we find that either the mate or the cook was asked whether they were looking out just before the collision. Under these circumstances it does not seem to us that the claimant has proved her case. There is nothing in the events themselves which suggest a failure to keep a lookout. The night was black and squally, and there is no reason to suppose that the barge, no more than a low-lying log in the water, would have been made out sooner than she was whether a lookout was kept or not.

Moreover, in view of the gross fault of the Josephine, which lay on an anchorage without light in a night like that in question, we are not disposed to inquire too nicely into the faults of the schooner. The

Victory and The Plymothian, 168 U. S. 411, 423, 18 Sup. Ct. 149, 42 L. Ed. 519.

Decree affirmed, with costs.